Gene Grizzell was charged in a six count indictment with three counts of the first degree rape of one of his daughters and also in three other counts with incest, also with his own daughter, these charges being pursuant to the provisions of § 13A-6-61, Code of Alabama 1975 as amended. The incest charges were also pursuant to the provisions of § 13A-13-3, Code of Alabama 1975 as amended. The jury found the appellant "guilty as charged in the indictment" and, following a sentencing hearing, the trial court set punishment at 90 years' imprisonment as punishment for his crimes.
Because reversible error occurred in two instances during the testimony of two of the prosecuting witnesses, this court has no alternative but to reverse and remand this cause for a new trial. Because of this, only a brief statement of the facts of this cause will be set out.
This case arises from charges preferred by one of the appellant's two daughters who told of alleged rapes which occurred while she was living with the appellant at his mobile home in Autauga County, Alabama on the dates of April 7, 1983, April 11, 1983, and April 14, 1983. This daughter, W.G., testified that the appellant began to fondle and molest her sexually when she was five or six years old. This process continued until she grew older and that the *Page 970 
appellant took liberties with her and with her sister over a period of years during their childhood until they reached maturity. She estimated that she had had sex with the appellant some 300 to 400 times. She stated that he would always come into the room when no one else was around and remove her from the room in which she slept with her sister. She stated that she was afraid of him and that he forced her to have sex with him not only by inserting his penis in her vagina, but also to have oral sex. She stated that she had made complaints to both her mother and, later, her stepmother after her father remarried, but that they did not believe her. She stated that finally, after she reached maturity, she moved out of the house after obtaining employment in Montgomery with a grocery chain.
During the course of her testimony the victim stated that she had become pregnant by her father and was forced to have an abortion. She stated that she had one abortion on October 7, 1981 and a second one approximately a year later on October 10, 1982 in Montgomery, Alabama. This testimony came in over objection.
The prosecutrix testified that she was afraid of her father because he was a large man and she had seen him beat up other men. On cross-examination she admitted she had made complaints against both grandfathers and a brother also.
The next witness for the State was the prosecutrix's sister, V.G.R., who likewise told of instances where her father began to fondle her from the time she was five or six years old and continued until he began to have sexual relations with her from the time she was 12 or 13 years old, until she left the home at age 17 and enlisted in the U.S. Air Force. She stated that she was now living in California as an Air Traffic Controller.
Like her sister, she had left her home as a teenager and went to live with her mother in Florida. She had later returned to live with her father and stepmother and, like the prosecutrix, was afraid to make complaints because she had seen her father beat up men. She testified that the appellant had had intercourse with her many times over the years and that he would come in the room and take her into another room where he forced her to have intercourse.
During her testimony, over objection, this witness was permitted to testify that she became pregnant by her father and now had a ten year old son. (R. 59-60). As with the prosecutrix, she stated that she had made complaints to her mother and stepmother but the complaints were not believed.
Finally an aunt of the two girls stated that she would back them in court and the two women made complaints to the authorities concerning their father's sex relations with them and this testimony was supported in court by this aunt.
The appellant, however, presented the testimony of his wife, his former wife, three sons, a daughter-in-law and his minister. All of these stated that the two women had made complaints against others and that they were not trustworthy. They denied having any knowledge that the appellant was having sexual relations with his two daughters.
 I
Appellant's counsel argues the trial court erred to reversal in allowing testimony to be placed before the jury by the prosecution concerning other alleged offenses perpetrated by the appellant against the prosecutrix and her sister where such testimony only served the purpose of showing that the appellant had the propensity to commit the type of crime for which he was charged. Appellant's counsel cites this court to the following authorities, indicating that the general rule in Alabama is that evidence of distinct and independent offenses is not admissible in the trial of a person accused of a specific crime, citing Mason v. State, 259 Ala. 438, 66 So.2d 557, 42 ALR 2d 847 (1953); Brasher v. State, 249 Ala. 96, 30 So.2d 31
(1947); Killough v. State, 438 So.2d 333 (Ala. 1983) and Exparte Cofer, 440 So.2d 1121 (Ala. 1983). *Page 971 
This general rule, however, is subject to several exceptions. In C. Gamble McElroy's Alabama Evidence, § 69.01(6) (3rd Edition 1977), the text reads as follows:
 "Evidence of the accused's commission of another crime is admissible if such evidence, considered with other evidence in the case, warrants a finding that both the now-charged crime and such other crime were committed in keeping with or pursuant to a single plan, design, scheme or system. This rule is applicable whether such plan, design, scheme or system is narrow and specific in scope or is measurably broad and general in scope." (Footnote omitted).
Specifically, in McDonald v. State, 57 Ala. App. 529,329 So.2d 583, cert. quashed, 295 Ala. 410, 329 So.2d 596 (1975) this court upheld under the exception herein discussed, the allowance of evidence of other transactions or enticements to four other females to come into court with reference to their cases which were then pending before the court.
Because of the novel manner in which the other sex offenses occurred, this court has also upheld the admission of evidence of this nature under the exception herein mentioned inHogue v. State, 54 Ala. App. 682, 312 So.2d 86 (1975) and Smithv. State, 409 So.2d 455 (Ala.Crim.App. 1981). See also authorities cited in these two opinions.
More particularly to the point in two cases on practically "all fours" with the facts of the present case, the details of the appellant's sexual intercourse with his daughters was specifically upheld under the identity and intent exceptions herein mentioned in the cases of Lee v. State, 246 Ala. 69,18 So.2d 706 (1944) and Durham v. State, 47 Ala. App. 89,250 So.2d 693 (1969), cert. denied, 287 Ala. 731, 250 So.2d 695 (1971), Heflin, C.J., dissenting.
We therefore hold, for the guidance of the trial court, that the testimony of the prosecutrix and her sister as to the offenses which occurred with each of them and their father were properly admitted at trial. Specifically, see Lee and Durham, supra.
 II
The prosecution in this case, however, went beyond the details of the sex assaults on the two women in presenting the evidence to the trial jury. In so doing, reversible error occurred.
As specifically noted in Lee v. State, 246 Ala. 69,18 So.2d 706 (1944), the prosecution was allowed to prove the fact of the prosecutrix's pregnancy and the procurring of two abortions. As stated in Lee, supra, this pregnancy ". . . through the agency of her father does tend to shed light on the main inquiry, but unlike the fact of sexual intercourse with the father, it also tends to unduly multiply the issues and diverts the minds of the jury from the main issue." The fact that the prosecutrix's father procurred her abortion is lacking in the requisite relevancy to render it admissible.
Similarly, the fact that the sister was permitted to testify over objection that she became pregnant and had a child by her father was also reversible error. Lee, supra, Brasher v. State,249 Ala. 96, 30 So.2d 31 (1947) and Cofer v. State,440 So.2d 1121 (Ala. 1983). See also Banks v. State, 358 So.2d 477
(Ala.Crim.App. 1978), cert. denied, 358 So.2d 480 (Ala. 1978).
This evidence as to the pregnancies of the two sisters was simply evidence of prior bad acts of a criminal defendant which is presumptively prejudicial. Cofer, supra. It interjects a collateral issue into the case which would divert the minds of the jury from the main issue. The admission of such evidence was clearly erroneous under the authorities herein cited.
The admission of such evidence was obviously "prosecution overkill".
It is indeed regrettable that, due to the nature of the rather revolting facts revealed by this record, this court has no alternative but to order a new trial in this cause. The disgusting and inhuman nature of the father's sex relations with his two daughters, if clearly proven at trial, are degrading and lacking in human compassion. *Page 972 
However, this court is sworn to follow the law as interpreted by the Supreme Court of Alabama. Under the authorities cited, we have no alternative but to reverse and remand this cause for a new trial.
REVERSED AND REMANDED.
All the Judges concur.