145 So.2d 853

Clarence Wilmer SELLERS

v.

STATE.

2 Div. 52.

Court of Appeals of Alabama.

Oct. 16, 1962.

Jos. J. Thompson, Butler, for appellant.

MacDonald Gallion, Atty. Gen., and Winston Huddleston, Sp. Asst. Atty. Gen., for the State.

JOHNSON, Judge.

Appellant Clarence Wilmer Sellers was tried in the Circuit Court of Choctaw County, Alabama, for the carnal knowledge of his eleven year old daughter, Audrey Nell. The indictment against the appellant charges as follows:

"The Grand Jury of said County charge that before the finding of this Indictment, Clarence Wilmer Sellers, alias Wilmer Sellers, alias Clarence W. . Sellers, whose name is otherwise unknown to the Grand Jury, did carnally know, or abuse in the attempt to carnally know Audrey Nell Sellers, a girl under the age of twelve years, against the peace and dignity of the State of Alabama."

From a jury verdict of guilty as charged and the imposition by the court, in accordance with the verdict of the jury, of a sentence of ten years in the penitentiary as punishment for said offense, appellant has maintained this appeal.

The victim, Audrey Nell Sellers, testified that she lived in Choctaw County at Barrytown and was eleven years old at the time of the offense which occurred on February 4, 1961, and that she reached the age of twelve years on November 29, 1961.

The witness stated that while she was in the kitchen cooking dinner about 1:30 P.M. on February 4, 1961, in the absence of her mother from their home, the appellant entered the kitchen where she was alone and procured her to lie upon the floor beside the cook stove, and that the defendant then pulled her pants off, got on top of her, and exposed his phallus. When asked by the Solicitor to describe to the jury what the defendant thereafter did to her, the witness employed as her reply the use of a descriptive sex colloquialism frequently used by many when referring to sexual experience. It can here be concluded that such sex term was, in the vernacular of this witness, a short hand rendition of fact describing her conception of the assault she suffered from her father.

The witness further testified that the private parts of the defendant came in contact with her private parts but that there was no penetration and that "it hurt just a little", and that while her father was thusly assaulting her some wet liquid was deposited on her body around her female organs.

The assaulted child testified that her father was forty-five years of age, a farmer, part-time sawmill worker and night watchman. Under cross-examination, Audrey Nell stated that her father had not hurt her in any way; that she did not remember making a prior statement, in the witness room of the courtroom at a habeas corpus hearing brought by appellant, to the effect that her father had never tried to do anything indecent to her; and that she did not remember making a statement to Mrs. Leon Mosley, in the Mosley Store in the presence of Mrs. Ida Casey, to the effect that the accusations against her father were untrue. On cross-examination, the witness admitted that upon the occasion of a prior hearing for bail before Judge Lindsey she stated that the defendant did not bruise her or hurt her in any way.

Upon redirect examination, the witness stated that about three or four months before February 4, 1961, the defendant had gone to bed with her and that while in bed he put his private parts against hers. She stated that her sister was in the room at the time and that her mother was in another room of their home. She stated that there was no penetration of her sex organs by the defendant at any time.

Although the replies made by Audrey Nell on cross-examination reveal some statements which are probably inconsistent or contradictory with reference to the alleged crime, sufficient testimony yet remained to create a question of fact for the jury as to the guilt of the defendant and the credibility thereof was to be determined by such body. There was sufficient testimony by Audrey Nell of abuse to her female organs to support the action of the trial judge in submitting the issues of fact to the jury. Huggins v. State, 271 Ala. 428, 123 So.2d 911; James v. State, 246 Ala. 617, 21 So.2d 847; Lee v. State, 246 Ala. 69, 18 So. 2d 706.

Argie Fay Sellers, sister of Audrey Nell, testified that she was fifteen years of age and was also the daughter of the appellant. Over timely objections made by the counsel for the defendant, the witness testified that her father, prior to the date of the alleged crime, intermittently had practiced sexual relations with her, which deflowering started when she was nine years of age and continued down through the years; that she was in the third grade when such intercourse began; and that it occurred "sometimes once a week and sometimes twice a week".

During the examination of Argie Fay by the State Solicitor, the following occurred which requires us to reverse this case:

"Q. How long did that continue, if it did continue?

"Mr. Thompson: I object and assign the same grounds.

"Judge Lindsey: Overrule the objection.

"Mr. Thompson: Except.

"A. It continued all through the years.

"Mr. Thompson: I object on the same grounds.

"Judge Lindsey: The court overruled the objection.

"Q. Finish the answer.

"A. It continued through the years up until I got pregnant.

"Mr. Thompson: I object and move for a mistrial. The answer was not responsive to the question. It is designed to prejudice the mind of the jury. It is illegal testimony. It tends to divert the mind of the jury from the issue in this case this man is being tried for today, tends to multiply the issue, tends to place emphasis upon the charge against this man. It is highly prejudicial.

"Judge Lindsey: I overrule the objection and deny the motion.

"Mr. Thompson: Except.

"Q. When did you get pregnant?

"Mr. Thompson: I object and assign the same grounds.

"Judge Lindsey: Overrule the objection. Pregnant by whom?

"Q. Whom did you get pregnant by?

"Mr. Thompson: I make the same objection.

"Judge Lindsey: I overrule the objection.

"Mr. Thompson: Except.

"A. By my father."

It was proper to establish a pattern of sexual behavior into which the alleged crime fits. Allen v. State, 35 Ala.App. 170, 171, 44 So.2d 801, 77 A.L.R.2d 850 n., 880 n. The pattern may be shown through testimony of the complaining witness and other victims. Noble v. State, 253 Ala. 519, 45 So. 2d 857. In keeping with this rule, it was permissible for the daughters of Sellers to testify that their father engaged in illicit relations with them on occasions other than that charged in the indictment. McKenzie v. State, 250 Ala. 178, 33 So.2d 488; 33 Ala. App. 7, 33 So.2d 484.

It is evident from a comment in the record that the trial judge was using Lee v. State, 246 Ala. 69, 18 So.2d 706; earlier opinion 31 Ala.App. 91, 13 So.2d 583, cert. den. 244 Ala. 401; 13 So.2d 590, as a guiding judicial light to pilot him around the whirlpools of judicial error in this trial, yet in the heat of the trial, the judge, in his judicial zeal to ascertain the full facts, inadvertently transgressed one of the fundamental precepts laid down in the Lee case.

The defendant Lee was on trial for a like offense, and we find a factual situation in his trial closely analogous to that with which we are here confronted. The State of Alabama presented a witness who was, as here, a daughter of the defendant and sister of the prosecutrix, who was permitted to testify over the objection of the defendant, that the defendant had intercourse with her prior to the commission of the crime for which he was charged and that pregnancy resulted from the intercourse. In reversing the Lee case because of this testimony, Mr. Justice Livingston, speaking for the Supreme Court, concisely stated:

"The State should not have been allowed to prove the fact of Ruby's pregnancy or the procuring of her abortion. The fact of Ruby's pregnancy, through

the agency of her father, does tend to shed light on the main inquiry, but unlike the fact of sexual intercourse with her father, it also tends to unduly multiply the issues and to divert the minds of the jury from the main issue. The fact that Ruby's father procured her abortion is lacking in requisite relevancy to render it admissible."

 It was permissible to establish a pattern of promiscuous sexual behavior with children, Lee v. State, supra; Noble v. State, supra; McKenzie v. State, supra.; but the pregnancy resulting from that behavior multiplied the issues and tended to divert the minds of the jury from the main issue.

We cannot circumvent the holding of the Lee case and are, therefore, compelled on the authority thereof to order a reversal of this case. It is so ordered.

Reversed and remanded.