538 So.2d 1216 (1987)
Roosevelt WATSON
v.
STATE.
5 Div. 56.
Court of Criminal Appeals of Alabama.
September 8, 1987.
Rehearing Denied October 13, 1987.
Certiorari Granted December 16, 1988.
*1218 J. Michael Williams, Sr., Auburn, for appellant.
Charles A. Graddick, Atty. Gen., and Jean Williams Brown, Asst. Atty. Gen., for appellee.
PATTERSON, Judge.
The appellant, Roosevelt Watson, was indicted and convicted for the offense of rape in the first degree; specifically, for the rape of one of his daughters, who was less than 12 years of age, while he was 16 years or older. Ala. Code (1975), § 13A-6-61(a)(3). Watson was subsequently sentenced to a term of life imprisonment and fined $100 for the Victims Compensation Fund.

I
Watson contends that "the evidence did not sustain a conviction for rape I." We find that the prosecution presented a prima facie case of the offense of rape in the first degree, as defined by § 13A-6-61(a)(3). Clearly, the prosecution presented sufficient evidence of the age requirements of the prosecutrix[1] and Watson. The testimony also presented evidence of the occurrence of sexual intercourse between the prosecutrix and Watson on her tenth or eleventh birthday. Although the prosecutrix did not describe the act in mature terms, a jury question was presented, for she did testify that "[my father] had sex with me" and "[h]e stuck the private thing in my private." The nature of penetration need not be proved in any particular form of words. Swint v. State, 455 So.2d 285, 287 (Ala.Cr.App.1984).

II
During the presentation of its case, the prosecution introduced testimony from the prosecutrix's mother of prior sexual mistreatment by appellant of the prosecutrix's sister. The prosecutrix's mother testified, in pertinent part, as follows: On March 22, 1983, approximately nine months prior to the alleged offense against the prosecutrix, which is alleged to have occurred on December 22, 1983, the mother observed her ex-husband, appellant, in the prosecutrix's sister's room. She further observed that the prosecutrix's sister was in her bed and undressed, and appellant, with his pants down, was standing beside her bed. The mother asked him what they were doing, and he said they were "just playing, that it was nothing." At the time, the prosecutrix's sister was 12 years old.
The mother further testified that both the prosecutrix and the prosecutrix's sister became pregnant and that the sister's baby was stillborn on August 27 or 28, 1984, and the prosecutrix's baby was born on September 27, 1984. She also testified about the two girls' explanations after their deliveries, as follows:
"Q. They told you how they got pregnant?
"A. Yes.
"Q. What did they say to you?
"....
"A. They said that their father would come upstairs on nights that he stayed there at the house. He would come upstairs and get them and take them back downstairs and force them to lay down on the floor. And tell them that if they didn't that he would kill them.
"Q. Did they tell you how many times he forced them to do this?
"A. Yes. As many as two or three times each. [The prosecutrix's sister] said one night she was up in her bed asleep, and he came upstairs and got her and took her downstairs and forced her on the couch at gunpoint and had intercourse with her."
Watson contends that the trial court erred in admitting testimony concerning his prior sexual mistreatment of the prosecutrix's sister and the resulting pregnancy and stillbirth and the hearsay testimony to *1219 the effect that the prosecutrix's sister had said that he had impregnated her.
In determining the merits of this argument, we must keep in mind the recent case of Anonymous v. State, 507 So.2d 972 (Ala.1987), wherein our supreme court, in reviewing the defendant's convictions on three counts of first degree rape of one of his daughters and three counts of incest with the same daughter, applied the following general rule to evidence very similar to that now before us: "In a prosecution for one offense, evidence of collateral crimes or acts is generally inadmissible to prove the guilt of the accused." Id. at 973 (footnote omitted). It held the following evidence to be inadmissible because the evidence fell within no exception to the general exclusionary rule barring evidence of collateral crimes or acts: (1) Testimony concerning the defendant's prior sexual mistreatment of the prosecutrix, his daughter; (2) testimony of the prosecutrix's pregnancies and abortions which occurred prior to the acts alleged in the indictment; (3) testimony concerning the defendant's prior sexual mistreatment of another daughter; and (4) testimony of the other daughter's pregnancy and subsequent birth of a child. Id. at 975.
In determining whether Anonymous requires that this cause be reversed, we begin our analysis with the holding that the evidence of the instant prosecutrix's pregnancy and delivery was admissible.[2] We view the Anonymous court's determination that evidence of the pregnancy of the prosecutrix is inadmissible to be limited in application to evidence of a pregnancy resulting from an inadmissible collateral sexual act. The Anonymous court held that the prior collateral acts, from which the prosecutrix's pregnancies and abortions resulted, were not admissible under any exception to the general rule, and, as it follows, that evidence of the pregnancies and abortions was inadmissible. Id. at 974-75. However, in the instant case, we find that evidence of prosecutrix's pregnancy and delivery, which allegedly resulted from the act charged in the indictment, was properly admitted under the following general rule, which we find to be unaffected by Anonymous:
"In ... any ... criminal proceeding involving a charge of sexual intercourse with a woman, the fact of the female's having given birth to a child in consequence of such intercourse is admissible. In such criminal charges as adultery, carnal knowledge and incest, for example, it has been held that evidence that a child was born to the woman involved, if the laws of nature would suggest that the time of conception was about the time of the claimed act of sexual intercourse, is admissible.... It should be noted, however, that if the birth of the child occurred at such a time that conception at the time of the claimed intercourse was impossible, then proof of such birth is not admissible as tending to show the claimed intercourse."
C. Gamble, McElroy's Alabama Evidence, § 51.01(1) (3d ed. 1977) (footnotes omitted). See also Harrison v. State, 235 Ala. 1, 3, 178 So. 458, 460 (1937), cert. denied, 235 Ala. 292, 178 So. 460 (1938) (wherein the court, in holding admissible the prosecutrix's testimony that the accused was the father of her child, found the evidence to be relevant as "support[ing] the affirmative of the issue that the defendant had sexual intercourse with the mother"); Hall v. State, 378 So.2d 1193, 1194 (Ala.Cr.App. 1979), cert. denied, 378 So.2d 1196 (Ala. 1980) (wherein the court, in holding that evidence of the prosecutrix's pregnancy, after the alleged rape and at a time consistent with conception about the time of the offense, was admissible along with evidence of the prosecutrix's later abortion, stated that "there is general uniformity in holding that evidence of pregnancy of the prosecutrix is admissible in cases of statutory rape"); Davis v. State, 21 Ala.App. 595, 110 So. 599 (1926); Davis v. State, 20 *1220 Ala.App. 463, 103 So. 73 (1925) (wherein the court held that proof of the birth of a child to a girl under sixteen years of age is material and relevant as establishing the corpus delicti of carnal knowledge and tending to fix the time of the crime); and Mitchell v. State, 20 Ala.App. 165, 101 So. 168 (1924). Accordingly, in the present case, evidence of the prosecutrix's pregnancy, which allegedly resulted from the charged crime, was material and relevant as tending to prove the corpus delicti, for the proof tended to "[place] cause and effect in proper point of time." Id. at 166, 101 So. at 169.
"We know as a scientific fact that when a child is born there has been an act of sexual intercourse, and as a matter of common knowledge we also know that the period of normal gestation is approximately 270 days." Davis, 20 Ala.App. at 464, 103 So. at 74. In light of the properly admitted fact of the prosecutrix's pregnancy, which allegedly resulted from the charged act, and Watson's defense that he was not present on the alleged night of conception and, thus, did not commit the crime, the question of the rapist's identity was put into issue. See Johnson v. State, 242 Ala. 278, 280, 5 So.2d 632, 634 (1941), cert. denied, 316 U.S. 693, 62 S.Ct. 1299, 86 L.Ed. 1763 (1942); Beavers v. State, 511 So.2d 951 (Ala.Cr.App.1987); Smith v. State, 409 So.2d 455 (Ala.Cr.App.1981). It is upon this conclusion that we again distinguish the holdings of Anonymous. In Anonymous, the court found the following:
"The identity of the person who actually committed the acts with which the defendant was charged was not at issue. The defendant did not argue that `someone else committed the acts with which he was charged'; instead, he merely denied that the acts ever occurred. Therefore, because there was no `real and open' issue concerning identity, the collateral acts could not be admissible as going toward such an issue."
507 So.2d at 975. Under the facts before us, one being the prosecutrix's pregnancy approximately nine months after the alleged offense, it cannot be argued that the charged act never occurred; thus, the evidence presented a "real and open" issue concerning who raped the prosecutrix.
It is upon our finding that the jury was presented with the question of the rapist's identity that we base our conclusion that evidence of Watson's sexual mistreatment of the prosecutrix's sister was admissible. We find this evidence to have been admissible under the exception "relevancy in various particular crimes." See Schroeder, Evidentiary Use in Criminal Cases of Collateral Crimes and Acts: A Comparison of the Federal Rules and Alabama Law, 35 Ala.L.Rev. 241, 248 (1984), for a list of exceptions to the general exclusionary rule. The following has been observed in regard to this exception:
"Another exception to the general exclusionary rule revolves around prosecutions for certain specific crimes. Actually, this exception is more an amalgam of several exceptions than a separate and distinct exception on its own. The most apparent of the specific offenses involved in this exception are sex crimes. As a general proposition, courts seem more willing to admit evidence of collateral acts when sex crimes are involved. ... A number of decisions have ... approved the introduction of evidence of the defendant's sexual activity with persons other than the victim in carnal knowledge, rape, and incest cases."
Id. at 265-66 (footnotes omitted). In the instant case, we find this exception,[3] under *1221 which the evidence of Watson's sexual mistreatment of the prosecutrix's sister was admissible, to be an amalgam of the "identity" exception and the "common plan, scheme or system" exception.[4] We find the following to be apropos to the application of the "identity" exception:
"One of the primary exceptions for allowing evidence of prior and subsequent crimes is when such other crimes go to show the identity of the perpetrator of the now charged offense. In other portions of this text we have seen that this exception traditionally has been applied only when the person who committed the now-charged crime did so in a novel or peculiar manner. It is reasoned that this should permit the prosecution to show that the accused committed other similar offenses in the same novel or peculiar manner. However, the identity exception seems to have taken on a more liberal definition when the defendant is charged with a sex crime such as rape. In such cases the courts seem to allow proof of other similar crimes by the accused if they, in any way, go to identify him as the person who committed the now-charged crime."
Gamble, supra, at § 70.01(22)(b) (footnote omitted). See also Potts v. State, 500 So. 2d 1318, 1320 (Ala.Cr.App.1986) (wherein the court observed, "Courts have been somewhat more willing to receive evidence of prior bad acts in cases of sex crimes"); Brumfield v. State, 453 So.2d 1097 (Ala.Cr. App.1984) (wherein the court noted that a liberal definition of the identity exception might be appropriate as applied to sex crimes); Weatherford v. State, 369 So.2d 863, 870 (Ala.Cr.App.); cert. denied, 369 So.2d 873 (Ala.1979) (wherein the court quoted from Gamble, supra, at § 70.01(22)(b)).
Under the instant facts, we consider the evidence of Watson's sexual acts with the prosecutrix's sister to fall within these exceptions because of similarity in circumstances. The evidence does not fall within the prohibitive rule of Brasher v. State, 249 Ala. 96, 30 So.2d 31 (1947), that evidence of collateral acts committed by the accused with third persons cannot be admitted, under the pretext that it is relevant to the question of identity, when the "evidence does nothing more than show the accused's inclination or disposition to commit that type of crime or to show his sexual depravity." Id. at 99, 30 So.2d at 33. Rather, we find that Watson's acts against the prosecutrix's sister "are so connected by circumstances with the particular crime in issue as that the proof of one fact with its circumstances has some bearing upon the issue on trial other than to show the defendant's bad character or moral delinquency." Id. at 100, 30 So.2d at 35. See, e.g., Brasher v. State (wherein the court held that evidence of the defendant's alleged attempted rape of a 16-year-old female was admissible in the prosecution of the defendant for allegedly raping a 14-year-old female, because the evidence was relevant to the question of identity); Coleman v. State, 491 So.2d 1086, 1087 (Ala.Cr. App.1986) (wherein the court held that evidence of the defendant's sexual abuse of his four step-daughters, who lived with him and ranged in age from thirteen months to ten years, was admissible in his prosecution for first degree rape of his six-year-old step-daughter, because this evidence would show "plan, scheme, and intent"); Mitchell v. State, 45 Ala.App. 668, 235 So.2d 917 (1970) (wherein the court, in reviewing a conviction for carnal knowledge, held properly admissible the testimony of three other girls under 12 to the effect that the defendant had attempted to sexually assault them); Sellers v. State, 41 Ala.App. 612, 145 So.2d 853 (1962) (wherein the court held that testimony of the prosecutrix's sister that the defendant, their father, had intercourse with her was admissible on the apparent ground that it fell within the "plan, design, scheme or system" exception, for the court noted that the testimony *1222 established a "pattern" of sexual behavior into which the alleged crime fit).
Although the evidence of the sexual abuse of prosecutrix's sister was admissible, the fact of her pregnancy was inadmissible, according to the holding of Lee v. State, 246 Ala. 69, 18 So.2d 706 (1944), which was followed in Sellers v. State, 41 Ala.App. 612, 145 So.2d 853 (1962). In Lee, our supreme court ruled that, in the defendant's prosecution for carnal knowledge or abuse in an attempt to carnally know his daughter, evidence of similar acts committed against his other three daughters was admissible. 246 Ala. at 71, 18 So.2d at 707. However, the court further concluded that evidence of the pregnancy of one of the defendant's other daughters was inadmissible. Id. at 72, 18 So.2d at 708. The court reasoned, "The fact of Ruby's pregnancy, through the agency of her father, does tend to shed light on the main inquiry, but unlike the fact of sexual intercourse with her father, it also tends to unduly multiply the issues and to divert the minds of the jury from the main issue." Id. One might argue that this ruling is limited, in application, to situations where, as in Lee, "[the married prosecutrix's] testimony is not at all clear or satisfactory as to whether she became pregnant at a time which would necessarily exclude the possibility of her husband's agency." Id. However, it appears from its rendition of facts that the Sellers court, in following Lee, did not confine the holding of Lee to such a situation. In Sellers, where the defendant was prosecuted for carnal knowledge of his 11-year-old daughter, another daughter testified that her father impregnated her at a time specified only as before she was 15 years old. 41 Ala.App. at 614, 145 So.2d at 855-56. In ruling that the trial court erred in allowing this testimony into evidence, the court held,
"It was permissible to establish a pattern of promiscuous sexual behavior with children...; but the pregnancy resulting from that behavior multiplied the issues and tended to divert the minds of the jury from the main issue."
Id. at 615, 145 So.2d at 856.
Accordingly, this cause must be reversed and remanded for a new trial. In the event that Watson is retried, the trial court, in all likelihood, will find itself reckoning with a holding of Anonymous not advanced on this appeal. In the interest of judicial economy, we comment on that particular ruling in the context of this case. The Anonymous court's ruling that evidence of the defendant's prior sexual mistreatment of the prosecutrix is inadmissible is a clear departure from the seemingly established law of this state. The general rules allowing, in carnal knowledge prosecutions, incest prosecutions, and rape prosecutions, the admission of evidence showing a defendant's prior or subsequent acts indicating a sexual passion for the prosecutrix are expressed in Gamble, supra, at § 45.11(3), (4), and (5), respectively. Likewise, in Schroeder, Hoffman and Thigpen, Alabama Evidence, § 4-4(8) (1987), the following is observed:
"[I]n prosecutions for fornication, statutory rape and sodomy other similar acts are admissible as tending to show the relationships and intimacy of the parties. In rape cases, the state may introduce evidence that the accused made sexual overtures toward the victim before or even after the rape to show that the accused had a `sexual passion for the victim.' A similar rule applies in incest cases." (Footnotes omitted.)
See also Deason v. State, 363 So.2d 1001, 1005 (Ala.1978) (wherein the court observed that, in a carnal knowledge case, the prosecution may introduce evidence of sexual relations between the defendant and the prosecutrix before and after the act on which the prosecution is based because such evidence is relevant as showing the relation and intimacy of the parties and as confirming the prosecutrix's testimony); Brasher v. State, 249 Ala. 96, 98-99, 30 So.2d 31, 33 (1947) (wherein the court noted that "[t]he rule in this jurisdiction, as it is generally, is that in some sexual cases, such as fornication, statutory rape and sodomy, other similar acts between the same parties are admissible as tending to sustain the principal charge by showing the relation and intimacy of the parties"); Harrison *1223 v. State, 235 Ala. 1, 178 So. 458 (1937), cert. denied, 235 Ala. 292, 178 So. 460 (1938) (wherein the court held that it is permissible to admit evidence showing acts of sexual intercourse, which occurred before and after the incident upon which the indictment for statutory rape rested, as tending to sustain the principal charge); Murphy v. State, 444 So.2d 897, 898-99 (Ala.Cr.App.1984) (wherein the court followed Harrison v. State); Hammes v. State, 417 So.2d 594, 596-97 (Ala.Cr.App. 1982) (wherein the court, in reviewing the appellant's conviction of rape in the second degree of his daughter, held that his daughter's testimony about her father's prior sexual misconduct toward her was properly admissible under Ex parte Deason); Durham v. State, 47 Ala.App. 89, 250 So.2d 693 (1969), cert. denied, 287 Ala. 731, 250 So.2d 695 (1970) (wherein, in a carnal knowledge case, the court followed Harrison in affirming admission of evidence of subsequent sexual relations); Hunt v. State, 44 Ala.App. 479, 213 So.2d 664, cert. denied, 282 Ala. 727, 213 So.2d 666 (1968) (wherein the court followed Brasher and Harrison); and Skinner v. State, 36 Ala.App. 434, 60 So.2d 363, cert. denied, 258 Ala. 713, 60 So.2d 367 (1952) (wherein the court cited 27 Am.Jur. Incest § 15, for the proposition that in a prosecution for incest, evidence of incestuous intercourse between the parties other than those charged in the indictment is, if not too remote, admissible).
Evidently, in ruling that "there exists no exception upon which the admissibility of the testimony concerning the prior sexual mistreatment of the defendant's [daughter] could be based," 507 So.2d at 975, our supreme court in Anonymous implicitly overruled the cited holdings of the above cases.[5] Moreover, since this evidence of prior sexual acts with the victim is characterized as evidence of motive, see Gamble, supra, at § 45.11, the Anonymous court implicitly has rejected the proposition, stated in McDonald v. State, 241 Ala. 172, 174, 1 So.2d 658, 660 (1941), that evidence of motive, even though motive is not an element of the crime, is always admissible. However, in applying this Anonymous ruling to the facts of the instant case, we view it not as a prohibition to the introduction of the victim's testimony of prior sexual acts committed by Watson, for, although it apparently cannot be introduced as evidence of motive, it is admissible under the same exceptions that permit introduction of the evidence of Watson's assaults against the prosecutrix's sister.
As a final note, we observe that testimony concerning all but one of the collateral acts committed against the prosecutrix's sister was hearsay testimony of the prosecutrix's mother which does not come within any exception to the hearsay rule. Accordingly, this testimony was incompetent. See Poke v. State, 387 So.2d 310, 312 (Ala.Cr.App.1980) (citing 22A C.J. S. Criminal Law § 690 (1961) and wherein the court stated that evidence of similar crimes "must be established by evidence which is legal and competent"); Moreland v. State, 373 So.2d 1259, 1261 (Ala.Cr.App. 1979) (wherein the court observed that the reasonable inference of the involvement of the defendant must be furnished by "some legitimate evidence" [emphasis added]); Hill v. State, 339 So.2d 1077 (Ala.Cr.App.), cert. denied, 339 So.2d 1082 (Ala.1976) (wherein the court recognized that, even if the evidence is admissible under an exception, it may still be inadmissible based on another objection such as hearsay).
Based on the erroneous admission of evidence of the pregnancy of the prosecutrix's sister, this cause is due to be, and it is hereby, reversed and remanded.
REVERSED AND REMANDED.
TAYLOR and McMILLAN, JJ., concur.
BOWEN and TYSON, JJ., concur specially, with opinion.
BOWEN, Presiding Judge, concurring specially.
I concur in the majority opinion and adhere to my view, expressed in my dissent in Beavers v. State, 511 So.2d 951 (Ala.Cr. *1224 App.1987), that the identity exception should not be given liberal extension in cases involving sex crimes.
TYSON, Judge, concurring specially.
I concur in the judgment of this court reversing and remanding this cause for a new trial on authority of Lee v. State, 246 Ala. 69, 18 So.2d 706 (1944), and Grizzell v. State, 507 So.2d 969 (Ala.Crim.App.1986), affirmed, 507 So.2d 972 (Ala.1987).
However, I do not believe that this court, as a matter of law, can restrict the views of the Supreme Court of Alabama as indicated in the majority opinion; hence, this special concurrence.

ON APPLICATION FOR REHEARING
PATTERSON, Judge.
In denying the application for rehearing, we extend our opinion to hold that, even in applying a less liberal definition of the identity exception than that permitted by our precedent, we still uphold the trial court's admission of the evidence of Watson's sexual acts with the prosecutrix's sister.
OPINION EXTENDED; RULE 39(k) MOTION DENIED. APPLICATION OVERRULED.
All Judges concur.
NOTES
[1] The testimony established that the prosecutrix was less than 12 years of age even though it presented a conflict: the prosecutrix testified that her date of birth is December 22, 1972, while her mother stated that it is December 22, 1973. The offense was alleged to have occurred on December 22, 1983.
[2] Although Watson's appellate counsel did not contest the trial court's admission of the evidence of the prosecutrix's resulting pregnancy, as will be seen, we must consider this question to determine if the evidence of Watson's sexual mistreatment of the prosecutrix's sister was properly admitted.
[3] Another possible expression of this exception, as applied to prosecution for sex offenses, is as follows:

"To show a passion or propensity for unusual and abnormal sexual relations. Initially, proof of other sex crimes always was confined to offenses involving the same parties, but a number of jurisdictions now admit other sex offenses with other persons, at least as to offenses involving sexual aberrations."
McCormick on Evidence § 190, at 560-61 (3d ed. 1984) (footnotes omitted). In a note to the above passage, the author observed the following: "Some courts do not admit evidence of sex crimes with other victims as revealing an incriminating propensity, but achieve a similar result by stretching to find other exceptions to the rule against extrinsic character evidence applicable." Id. at n. 24.
[4] "This exception generally goes to the issue of the identity of the defendant. In fact, the identity exception and the common scheme or plan exception are often mentioned in conjunction with each other in the cases." Schroeder, supra, at 256.
[5] In concluding this, we declare that the above list is not exhaustive.